UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOREN RICHARD OLSEN, III,<br><br>                Petitioner,<br><br>    v.<br><br>JEFFREY PERKINS,<br><br>                Respondent. | Case No. C25-638-KKE-MLP<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Petitioner Soren Richard Olsen, III, proceeding *pro se*, is currently incarcerated at the Coyote Ridge Corrections Center in Connell, Washington, pursuant to a judgment and sentence from Skagit County Superior Court. He seeks relief from that judgment and sentence via a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* dkt. ## 1, 10.) Respondent has filed an answer to the petition, along with relevant portions of the state court record. (*See* dkt. ## 15-16.) Petitioner has filed a reply and a motion for reconsideration. (*See* dkt. ## 17, 21.) Having reviewed the original and amended petitions, Respondent's answer, the state court record, and Petitioner's reply, this Court recommends denying the petition for writ of habeas corpus and dismissing this action with prejudice, as further explained below.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

### A. Factual Background

The Washington Court of Appeals summarized the facts underlying Petitioner's convictions on direct appeal, providing context for the claims now before this Court:

> In late 2021, Officer Jon Flaherty of the Mount Vernon Police Department (MVPD) arrested Olson on a Department of Corrections (DOC) warrant after finding him asleep in a car. Flaherty later testified that in a search incident to arrest, he found in Olson's pockets a significant amount of cash and a large quantity of drugs, which tested positive for methamphetamine and fentanyl. In a subsequent search of the car, Flaherty found paraphernalia that he testified is typically associated with drug sales, including an unopened box of baking soda, which can be used to dilute methamphetamine. He also found a revolver inside a bag in front of the driver's seat, where Olson had been sitting.
>
> The State charged Olsen with one count of possession of fentanyl with intent to manufacture or deliver, while armed with a firearm (Count I), one count of possession of methamphetamine with intent to manufacture or deliver, while armed with a firearm (Count II), one count of escape in the second degree (Count III), and one count of unlawful possession of a firearm (UPOF) in the first degree.
>
> In April 2022, Olson moved to dismiss the charges against him. He argued that dismissal was required because MVPD allowed the car to be declared abandoned and towed from MVPD's lot three days after Olson's counsel appeared and requested discovery. [court's footnote: Although Olson's trial and appellate counsel suggest the car was "destroyed," and at least one witness suggested it was sent to "salvage," the record before us does not identify the ultimate fate of the car.] The trial court denied the motion and a jury found Olson guilty as charged.

(Dkt. # 16, Ex. 2 at 1-2.)

### B. Procedural Background

The jury returned its verdicts on June 14, 2022. (*See* dkt. # 16, Ex. 1.) Petitioner was sentenced to a total of 160 months confinement. (*See id.*) He appealed to the Washington Court of Appeals, which affirmed his convictions and sentence on January 22, 2024. (*See id.*, Exs. 2,

REPORT AND RECOMMENDATION - 2

7-10.) He then sought review by the Washington Supreme Court, raising five issues related to the destruction of evidence. (*See id.*, Ex. 11 at 5-8.)

While the appeal to the Washington Supreme Court was pending, Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Washington on June 6, 2024. (Dkt. # 16, Ex. 18 at 7.) The Washington Supreme Court subsequently denied review of the conviction on July 10, 2024, and the Washington Court of Appeals issued a mandate terminating direct review on August 8, 2024. (*See id.*, Exs. 12-13.) Petitioner then filed a personal restraint petition ("PRP") in the Washington Court of Appeals on August 22, 2024, which he voluntarily dismissed on October 23, 2024. (*See id.*, Exs. 14-17.) The United States Supreme Court denied certiorari of the conviction on November 4, 2024. *Olsen v. Washington*, 145 S. Ct. 451 (2024).

On December 3, 2024, the Superior Court of Washington transferred Petitioner's state habeas petition (filed June 6, 2024) to the Washington Court of Appeals for consideration as a PRP. (Dkt. # 16, Ex. 18 at 1.) The Court of Appeals dismissed this PRP on February 10, 2025. (*See id.*, Ex. 24.) Petitioner sought review from the Washington Supreme Court regarding both the Court of Appeals' dismissal of the transferred habeas petition and the separate PRP he voluntarily dismissed, but the Supreme Court denied review. (*See id.*, Ex. 25.) The Washington Court of Appeals then issued certificates of finality. (*See id.*, Exs. 26-28.)

This Court received Petitioner's original federal habeas petition on April 16, 2025. (Dkt. # 1.) Accompanying the petition were motions for a certificate of appealability and for assigned counsel. (Dkt. ## 2-3.) Petitioner then filed a motion to amend the petition, which this Court received on April 24, 2025, but the motion was not accompanied by a proposed amended petition. (Dkt. # 5.) This Court directed service of the original petition on May 5, 2025 (dkt. # 6),

and thereafter denied Petitioner's motion for assigned counsel and ordered the pending motions to amend and for a certificate of appealability be stricken as moot (dkt. # 8).

Petitioner then filed a second motion to amend, followed by the amended petition itself. (Dkt. ## 9-10.) Respondent, who had yet to respond to the original petition, requested and received an extension of time to file his answer. (Dkt. ## 11, 14.) And, because no responsive pleading had then been filed, Petitioner's second motion to amend was stricken as moot. (Dkt. # 12.) The operative petition in this action is Petitioner's amended petition. (Dkt. # 10.)

Respondent timely filed an answer to both the original and amended petitions on July 10, 2025, arguing that Petitioner's claims lack merit. (Dkt. # 15.) Respondent also submitted the relevant state court records. (Dkt. # 16.) Petitioner filed a reply on July 23, 2025, and a motion for reconsideration on August 5, 2025. (Dkt. ## 17, 21.) The record is now complete, and this matter is ripe for review.

### III. DISCUSSION

In his amended habeas petition, Petitioner identifies the following grounds for relief:

> GROUND ONE: Destruction of exculpatory evidence—Petitioner moved to dismiss his case based on the fact that law enforcement prematurely destroyed potentially exculpatory evidence, which the trial court denied.
>
> GROUND TWO: Affirmation of "no bad faith"—the appellate court applied the wrong legal standard in affirming the trial court's finding of "no bad faith" as the basis for denying Petitioner's motion to dismiss.
>
> GROUND THREE: Failure to preserve evidence—bad faith evinced by the fact that evidence was destroyed after defense counsel had specifically requested its preservation for discovery purposes.
>
> GROUND FOUR: Non-unanimous jury verdict—the seven-person jury denied Petitioner his Sixth Amendment right to a unanimous verdict.
>
> GROUND FIVE: Injection of racial bias—the prosecutor injected racial bias into the proceedings prior to trial, prejudicing the jury.

REPORT AND RECOMMENDATION - 4

        GROUND SIX: Judicial bias due to refusal to recuse—the trial judge demonstrated bias by refusing to recuse himself despite allegations of a conflict of interest.

        GROUND SEVEN: Prosecution of an antique firearm—Petitioner was subjected to prosecution based on an antique item that does not qualify as a firearm for the purposes of a federal unlawful possession of a firearm claim.

        GROUND EIGHT: Suppression of discovery photos—the prosecutor improperly denied the defense access to discovery photos before trial, impeding the ability to prepare a complete defense.

(Dkt. # 10 at 3-6.) The amended petition also raises two additional points: a due process issue concerning an apparently unrelated civil case, and supplementary constitutional challenges related to the listed grounds for relief. (Dkt. # 10 at 6-10.) Neither of these points presents a cognizable basis for habeas relief in this action, however. The civil case appears unrelated to Petitioner's incarceration, and the supplementary challenges do not present independent grounds for habeas relief.

    **C.    Governing Standard**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a highly deferential standard for federal court review of state court decisions. Under AEDPA, federal habeas relief is permitted only if the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)-(2). Review under § 2254(d) is limited to the record before the state court, and the petitioner bears the burden of proof. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Under § 2254(d)(1), "clearly established" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A state court's decision involves "an unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The standard under § 2254(d)(1) is "difficult to meet" and is satisfied only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. It is not enough that the state court decision was "incorrect or erroneous"; "[t]he state court's application of clearly established law must be objectively unreasonable." *Lockyer*, 538 U.S. at 75.

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). State courts are accorded "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to

REPORT AND RECOMMENDATION - 6

supersede the trial court's determination." *Id.* (alterations and internal quotation marks omitted) (quoting *Wood*, 558 U.S. at 301). "This is a daunting standard—one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as stated in Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to [a] petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Id.* at 1001.

> When the last state court decision adjudicating a claim is unreasoned,
>> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 584 U.S. 122, 125-26 (2018). If there is no reasoned state court decision, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.* at 102.

Finally, § 2254(e) states that a state court's factual findings are presumed correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

REPORT AND RECOMMENDATION - 7

§ 2254(e)(1).

**D.    Grounds One Through Three: Destruction of Evidence—*Youngblood* Claim**

Petitioner's first three grounds for relief challenge the denial of his motion to dismiss, arguing that law enforcement's failure to preserve the vehicle containing contraband violated his due process rights. (Dkt. ## 10 at 3-4, 17 at 10-22.) These claims all rely on the same core argument: that the destruction of the vehicle warranted dismissal. Respondent argues that Petitioner has not demonstrated bad faith by law enforcement, a necessary element for these claims to succeed. (Dkt. # 15 at 10.)

Petitioner argues the vehicle's destruction shortly after defense counsel requested discovery demonstrates bad faith. The trial court rejected this, finding no bad faith and noting the opportunity to cross-examine officers. (Dkt. # 16, Ex. 30 at 91-93.) The Washington Court of Appeals affirmed, stating that at most, law enforcement was "negligent or incompetent" in allowing the vehicle to be towed—conduct insufficient to establish bad faith. (*Id.*, Ex. 2 at 6.) This determination was a reasonable application of established law.

The Supreme Court's holding in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), is controlling: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Bad faith requires "official animus" towards the defendant or a "conscious effort to suppress exculpatory evidence." *California v. Trombetta*, 467 U.S. 479, 488 (1984). Critically, it hinges on the government's knowledge of the evidence's apparent exculpatory value when it was lost or destroyed. *Youngblood*, 488 U.S. at 56; *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997). The "mere failure to preserve evidence which could have been subjected to tests which might

have exonerated the defendant does not constitute a due process violation." *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001). The state court's adjudication aligns with this precedent.

Petitioner attempts to argue that the Washington Court of Appeals applied an incorrect legal standard, vaguely referencing RCW 7.69.030, the Washington victim's rights statute. (Dkt. ## 10 at 2, 17 at 6.) This argument is unpersuasive. Petitioner seems to suggest this statute somehow alters the *Youngblood* analysis. But *Youngblood* and its progeny establish the controlling federal standard for due process claims based on the failure to preserve evidence, and nothing in the record suggests the state court deviated from that standard. Indeed, the Washington Court of Appeals explicitly cited and applied *Youngblood* in its analysis. (Dkt. # 16, Ex. 2 at 4.) As the Washington Supreme Court recognized in denying review, "[t]he thrust of Olsen's argument continues to be that police acted in bad faith in failing to preserve the car. The Court of Appeals rejected this argument, and Olsen fails to offer a compelling reason to address this issue again." (Dkt. # 16, Ex. 26 at 3.) This demonstrates the state courts' understanding of the central issue as one of bad faith under *Youngblood*.

Because the Washington Court of Appeals found no bad faith, and that finding was not contrary to, or an unreasonable application of, clearly established federal law, Petitioner's first three grounds for relief necessarily fail. *See Trombetta*, 467 U.S. at 488; *see also United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006) (requiring "malicious intent"). The absence of demonstrable bad faith is fatal to these claims, and the state court's determination was reasonable based on the facts presented.

Accordingly, Petitioner is not entitled to habeas relief on grounds one through three.

REPORT AND RECOMMENDATION - 9

### E. Ground Four: Seven-Juror Verdict—Waiver

Petitioner contends that the seven-juror verdict violated his Sixth Amendment right to a unanimous jury. (Dkt. ## 10 at 4, 17 at 40-42.) Respondent argues that Petitioner expressly waived his right to a twelve-person jury. (Dkt. # 15 at 14.)

While the Sixth Amendment guarantees the right to a jury trial, it does not guarantee a jury of twelve. *See Williams v. Florida*, 399 U.S. 78, 100-03 (1970); *see also Ballew v. Georgia*, 435 U.S. 223, 239 (1978) (clarifying that a trial before a jury of less than six is unconstitutional). The critical question, therefore, is whether Petitioner knowingly and voluntarily waived his right to a twelve-person jury.

Prior to deliberations, the trial court noted that only eleven jurors were available due to COVID-19 concerns. (Dkt. # 16, Ex. 32 at 1109.) The prosecutor suggested proceeding with fewer jurors if the defense agreed, and Petitioner initially agreed to this proposal. (*Id.* at 1111.) Later, the court informed the parties that only seven jurors remained due to vaccination issues. (*Id.* at 1112-13, 1117.) Defense counsel stated that Petitioner had no objection to waiving his right to a twelve-person jury and was "prepared to waive to seven jurors to get a resolution on this case." (*Id.* at 1117.) The judge then questioned Petitioner directly, asking if he had discussed the matter with his attorney and understood the implications of waiving the right to a twelve-person jury. Petitioner responded, "I know the circumstances. I feel it's the best choice . . . I would like to have this resolved today… This is the only option." (*Id.*) The judge thus concluded that Petitioner voluntarily agreed to be bound by the verdict of the seven-person jury. (*Id.* at 1130-31.)

Given these circumstances, the Washington Court of Appeals reasonably rejected Petitioner's claim: "[t]he parties discussed options, and Olson made clear that he would rather

REPORT AND RECOMMENDATION - 10

proceed with seven jurors than delay things. Olson signed a written waiver and confirmed on the record that he wished to proceed with a seven person jury[.]" (Dkt. # 16, Ex. 2 at 11.) This determination that Petitioner knowingly and voluntarily waived his right to a twelve-person jury is supported by the record and constitutes a reasonable application of federal law.

Accordingly, Petitioner is not entitled to habeas relief on ground four.

### F. Ground Five: Prosecutorial Misconduct—Prejudice

Petitioner alleges prosecutorial misconduct based on "race-based fear bias" during pretrial hearings, objections, and witness questioning. (Dkt. ## 10 at 5, 17 at 42-44.) Respondent argues that Petitioner has not demonstrated either misconduct or prejudice. (Dkt. # 15 at 18-19.)

Petitioner did not raise this claim on direct appeal, instead asserting it only in a later-filed PRP that he voluntarily dismissed. (Dkt. ## 10 at 5, 17 at 43; *see also* dkt. # 26, Ex. 14.) That petition appears to allege racial bias based on objections made by the defense during trial and testimony from an officer that the drugs Petitioner was arrested with were from "Mexican Cartels." (Dkt. # 26, Ex. 14 at 41-44.)

Even assuming, *arguendo*, that the alleged conduct constituted misconduct, federal habeas relief requires a showing of actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637-39 (1993). Petitioner's amended petition offers no analysis or argument concerning prejudice. (Dkt. # 10 at 5.) As the Washington Supreme Court noted in denying review, "Olson lists a litany of other claims but does not support them with any analysis." (Dkt. # 16, Ex. 26 at 3.) This lack of demonstrable prejudice is fatal to this claim. Without a showing that the alleged misconduct had a substantial and injurious effect on the verdict, habeas relief is not warranted. The state court's implicit finding of no prejudice was a reasonable application of federal law.

Accordingly, Petitioner is not entitled to habeas relief on ground five.

REPORT AND RECOMMENDATION - 11

### G.  Ground Six: Judicial Bias—Speculation

Petitioner claims judicial bias due to a prior civil suit against the judge's former firm. (Dkt. ## 10 at 5, 17 at 45-46.) Respondent argues that Petitioner fails to demonstrate an unreasonable state court adjudication. (Dkt. # 15 at 19-20.)

Due process guarantees a fair trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). Yet most allegations of judicial bias do not rise to a constitutional level. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009). The dispositive inquiry is whether the trial was fair. *Id.* at 878-80. A state court's finding of no judicial bias is presumed correct under § 2254(d). *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997). Habeas relief is warranted only if the trial was "so fundamentally unfair as to violate federal due process." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995).

The Washington Court of Appeals reasonably denied his claim, finding that Petitioner relied on speculation and failed to meet the heavy burden of showing bias:

> After the jury returned its verdict, Olson moved for a new trial. He alleged that the trial judge "may have a conflict" because Olson previously prevailed against the judge's former law firm in a civil suit. The judge determined there was no conflict . . . But Olson's allegations of bias depend on facts outside the record that cannot be considered in this direct appeal . . . And while Olson speculates based on the trial judge's rulings that he was biased, "[j]udicial rulings alone almost never constitute a valid showing of bias."

(Dkt. # 16, Ex. 2 at 9-10.) This analysis demonstrates a reasonable application of the principles governing judicial bias claims. Petitioner has not shown that his trial was "so fundamentally unfair as to violate federal due process." *Duckett*, 67 F.3d at 740.

Accordingly, Petitioner is not entitled to habeas relief on ground six.

**H.      Ground Seven: Antique Firearm Exception—No Equal Protection Violation**

Petitioner alleges an equal protection violation because the federal unlawful possession of a firearm statute contains an exception for antique firearms manufactured before 1898, while Washington law does not recognize any such exception for antique firearms. (Dkt. ## 10 at 5, 17 at 46-47.) Respondent argues that Petitioner fails to demonstrate an unreasonable application of federal law. (Dkt. # 15 at 21.)

The Washington Court of Appeals reasonably rejected this claim, explaining:

> Olson also points out that the firearm he was convicted of possessing was manufactured in 1861, and that the federal UPOF statute contains an exception for antique firearms manufactured before 1898 . . . In support, he cites *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014), *United States v. Hernandez*, 769 F.3d 1059 (9th Cir. 2014), and *United States v. Benamor*, 937 F.3d 1182 (9th Cir. 2019). But the issue in *Aguilera-Rios* and *Hernandez* was whether a prior UPOF conviction under California law, which does not recognize an exception for antique firearms, could serve as a basis for a removal order and a federal sentencing enhancement, respectively . . . And the issue in *Benamor* was whether the defendant's knowledge of the non-antique status of a firearm was an element of the federal UPOF statute... None of these cases stand for the proposition that Olson's conviction under Washington's UPOF statute violates equal protection.

(Dkt. # 16, Ex. 2 at 10-11.) As the appellate court noted, the cases cited by Petitioner do not establish a federal right to an antique firearm exception related to state laws. Petitioner has not shown that the state court adjudication of his claim was an unreasonable application of federal law. The equal protection clause does not require states to mirror federal exemptions in their firearm laws.

Accordingly, Petitioner is not entitled to habeas relief on ground seven.

**I.      Ground Eight: Failure to Provide Discovery—State Law Issue**

Petitioner alleges the prosecutor failed to provide pre-trial discovery in the form of photos of the vehicle at issue in Petitioner's first three grounds for relief. (Dkt. ## 10 at 5-6, 17 at

REPORT AND RECOMMENDATION - 13

16-18.) Respondent argues that federal courts do not grant relief for state discovery errors. (Dkt. # 15 at 22.)

Because there is no clearly established federal law requiring pre-trial disclosure of inculpatory information, and because the Washington Court of Appeals found that the photographs *were* produced (dkt. # 16, Ex. 2 at 17), relief is barred under § 2254(d) and *Teague v. Lane*, 489 U.S. 288 (1989) (holding that relief cannot be granted upon a new rule of criminal procedure). *See also Gray v. Netherland*, 518 U.S. 152, 166-69 (1996) (holding that due process does not require prosecutor's to disclose their evidence before trial); *Weatherford v. Bursey*, 429 U.S. 545, 559-61 (1977) (noting there is "no general constitutional right to discovery in a criminal case"). The state court's factual finding is presumed correct, and Petitioner has provided nothing to rebut that presumption.

Accordingly, Petitioner is not entitled to habeas relief on ground eight.

### J.     Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability in this matter.

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's amended petition for writ of habeas corpus (dkt. # 10) be denied, and this action be dismissed, with prejudice, under § 2244(d). This Court further recommends that a certificate of appealability be denied and that Petitioner's motion for reconsideration (dkt. # 21) be stricken as moot. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 22, 2025**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Kymberly K. Evanson.

Dated this <u>1st</u> day of October, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge